The next case is Atser Research v. Raba-Kistner. Mr. Adams. Thank you, Your Honor. May I please have the floor? My name is Eric Adams and I'm here today representing Atser Research Technologies, Inc. Atser respectfully requests that this court reverse the trial court's summary judgment in favor of Raba-Kistner, RKI, and remand this case back to the trial court for further proceedings. Can you explain to me exactly what the lower court held? Did they invalidate every claim under 102 on summary judgment? There was an earlier decision by the trial court related to the claim construction. In the claim construction order, the trial court invalidated claims 14 through 20 of the patent issue, and that was based on indefiniteness under section 112, paragraph 2. And then is it your understanding that all of the other claims that were asserted, not necessarily 14 through 20,  Yes, Your Honor. Okay. So all other asserted claims have been invalidated as anticipated based on the order granting summary judgment, and your appeal to us is related to that anticipation. I know you're also appealing indefiniteness in litigation misconduct, I know, but with regard to the anticipation, you're appealing those other claims? Yes, Your Honor. So there's claims 1 through 13 that were remaining, and it's those claims that were addressed in the summary judgment and invalidated based on that 102B on sale law. So there are three issues on this appeal. The first one, of course, is the trial court erred in granting the summary judgment for RKI. The second issue is that the trial court erred in finding that this was an exceptional case under section 285. And then the third issue, of course, is that the trial court erred in finding that claims 14 through 20 are invalid as indefinite, which was in the claim construction order. Doesn't the aristocrat case pretty much put an end to that third issue, the indefiniteness issue? In aristocrat, we said you have to have specific algorithm structure, not just general computer structure, to support your means plus function claim. Well, there is no—we do concede that there is no specific algorithm disclosed in the specification as far as there's no listing of the calculations that need to be performed. However, we think that under the Medtronic case, that it is acceptable if there is a disclosure, for example, in this case. The specification discloses that there are going to be certain test methodologies related to pavement construction that are going to be practiced. And the specification specifically lists different groups of test methodologies and even names specific test methodologies within it. For example, the water absorption test. Any person of ordinary skill in the art would see that. These are standardized tests.  That's the part that's missing. You didn't introduce any evidence that one of skill in the art would understand the disclosure of the test methodologies to effectively satisfy the algorithm requirement of aristocrat. Well, it's our contention, Your Honor, that looking at the specification by itself, it makes it clear that these are standard tests and that those tests would have the calculations within them. And that linking is enough. But that's all attorney argument in the absence of any evidence to establish that. You started your sentence by saying one of skill in the art would recognize that these test methodologies Well, I'm not one of skill in the art. You might be, but this is argument you're giving. It's not testimony. And that's the problem that I have is I'm failing to see the evidence to establish that argument. Well, and what we relied on, Your Honor, is evidence was the patent. We didn't have any expert testimony as far as one of ordinary skill in the art. I think it would be helpful to me if you concentrated on the on-sale bar issue. Looking at the on-sale bar, as I said before, the trial court erred in granting the summary judgment, finding that basically there were three documents that the trial court relied on in validating claims 1 through 13. But it wasn't denied that there had been this sales transaction. That's correct. There was a transaction in 1997. Basically, there are three contract documents going back to 1997. One is the contract document itself, and there are two documents from August and September of 1997 related to a contract modification. It was those documents, the disclosures in those documents, that RKI contended disclosed a system that anticipated the claims 1 through 13. And the fact questions arise from those three documents. And it's because the disclosures in these documents, well, let me back up. The question in these documents is what do they disclose? You look at the documents themselves. No, the question is what was sold. And if your argument is that the sales documents were not sufficiently explicit, that's not enough if, in fact, the system was sold. Well, Your Honor, it is our contention that these sales documents did not disclose everything within the claims at issue. And, therefore, whether it was sold or not, it didn't anticipate these claims at issue because not all the limitations were disclosed. We're not talking about anticipation by public records. We're talking about the on-sale bar. Yes, Your Honor. Which relates to sale of the patented invention. Well, this was not a sale of the patented invention. That's my question. Why not? This was a separate, earlier technology that ANSWER had developed, and it was focused on a local area network, and it used individual computers, which required physical keys, to run the programs. The system that's covered by the patented claims required... But now your opponent says that that necessarily included the wide-angle network. Well, and if you look at the documents themselves, Your Honor, they specifically point to a local area network being used. There is no clear indication in these documents that a wide area network is being used. They do refer to the terms web and online, but in this context, looking at what's being disclosed in these documents focuses on a local area network, and in fact, one of the diagrams in these documents actually refers to a local area network. And so the distinction is these documents on this earlier technology refer to a local area network, whereas the patented claims cover a wide area network. And that's one of the limitations that's not disclosed, and it's our position that at the very least there's a fact question as to what's disclosed in this document for the anticipation of argument. What shows that the central server is on a local area network? As I looked at these documents, it seemed that there was nothing that limited this to a local area network. Well, there's one diagram, Your Honor, I believe it was reproduced in our brief. I believe it's on page 18 of our brief, and it specifically shows it refers, at least in one part of this diagram, to a local area network, that that's the technology that's being used. Are you talking about the one little line that shoots off to the right and to one computer? Yes, Your Honor. But you're talking about a central server, and one portion of the central server seems to be dealing with a local area network, but there's a lot more happening here. Well, and all of this is taking place on one job site within this Utah system. And the client computers down below are all on the construction sites, right? Separate construction sites. And they're all coming into this central server through communication software. Yes, Your Honor. And then there's one local area network off to the side, but that almost seems to suggest that the rest is something other than a local area network, doesn't it? A wide area network of some kind. Well, the fact is it's unclear from this document. There's no reference to the Internet, which is the standard example that's given for a wide area network. And here the only indication is, looking at what we have disclosed in these documents, it talks about a local area network, but it is off to one side. Well, right beside the database server, we see home web site. Doesn't that suggest that we're talking about the Internet? A wide area network? Well, looking at that... Web sends... usually has that sort of connotation, doesn't it? It usually does, but I think that in this context, if you look at it, that there's a distinction. If you're looking at a wide area network and an Internet, you're going to be using certain technology, certain tools, such as a web server. But just because you have a local area network doesn't mean you can't use that same technology. This system is actually in use, isn't it? It was actually sold and used, wasn't it? My understanding is that this was never actually used on the project. It was just disclosed in these contract documents as a potential modification. The software was used, but this particular setup... There was no online access that was sold and available and used? My understanding, Your Honor, my memory is that there was not. But all the evidence in this case indicated that web equals Internet, right? I mean, that's what the dictionary definition said. That's what all of the documents that were before the district court indicated. Were there any documents or any evidence at all that indicated when someone says web, they could be talking about a local area network? Well, it's just from the context of these documents. I mean, there is... I think there's already... If it just says web... I'm sorry. Just from this picture is what you're talking about. There's nothing else anywhere that would support the idea that the reference to web could be referring to a local area network. That's correct. I see that I'm in my rebuttal time. If there are no more questions, I'll reserve the rest of my time. All right. Thank you, Mr. Adams. We'll hear from Mr. Moran. I'm pleased to court. My name is John Moran. I represent the appellees in this appeal. I'd like to address the three issues that are before the court in this appeal. And the issues are in order that the... There was no genuine issue of material fact that precluded the summary judgment of the on-sale bar. There's been no showing of purely erroneous finding on the issue of exceptionality. And lastly, that the means plus function dependent claims were properly found to be invalid by the district court. Addressing the summary judgment of the on-sale bar, I'd like to start with the district court's finding that there was no material, no genuine issue of material fact concerning the issue before the court at the district court level. And that was whether or not the 1997 contract modification disclosed and sold a system that included a server connected to the web. And as we just had a discussion with appellant's counsel, the figure, it's on page 21 of the red brief and in the appendices, clearly indicates that there is a central server connected to the web. And there's an issue of what does web mean. And it can indicate in the figure that web is capitalized, indicating a proper noun. The district court looked to the plain meaning of the term, looked at dictionaries to see the plain meaning of the term meaning internet, which is precisely what plaintiff below, the district court level expert, did the same thing. Dr. Murphy, if you will, at appendix 677, looked at Wikipedia before launching into his infringement analysis to come up with the same interpretation that district court did, and that was that the web indicated internet. Internet was an example of a wide area network under district court's finding. Mr. Foltz did the same thing at A660. Of course, the things that we're worried about are these three computers in the middle, right? Is there anything that indicates that they're hooked up to the central server via the web? We see that there is a U-dot computer off to the left, which is kind of connected in by the web. But what is the connection between the clients that are on the various construction sites? That's what we're really worried about, isn't it? No, Your Honor. The issue with respect to the claim before the district court and this court is whether or not there was a server connected to the wide area network. There could be a discussion about the three client ones, QC Labs, CAT Labs, and IA Labs, but with respect to the on-sale bar of the system that was sold to U-dot, the issue is, is there a server that's connected to a wide area network? And the answer is yes, as the district court found under the plain meaning of the term web. Was there any evidence besides the sale documents or the offer documents to explain what, in fact, was offered for sale? Besides the contract documents that were before the district court? No, Your Honor. The contract documents that were before the district court did discuss that the data would be exchanged by way of an online methodology using a web home server. So, in addition to this figure, and we're concentrating on this figure, there were also documents that had some text associated with them discussing the change to the prior approach that had been in the contract with U-dot. But with the meaning of those documents in dispute, how can there be some way of judgment of an on-sale, of a sale or an offer? Because there's, as the district court correctly found, no genuine issue of material fact. And the question is, in this document, figure one is before the court, does the plain meaning of a web indicate that the server, the central server is connected to the internet, which is a wide area network? And there was no genuine issue of material fact before the district court. But why is that correct? They disputed that material fact? They presented no evidence to the contrary to indicate that web meant anything other than its plain meaning, which is what the district court found. The evidence was before the district court that web is internet. But the issue here is not one of claim construction. The question is, what, in fact, was actually on sale? Yes, that's correct, Your Honor. And the position of defendants below, at least here, is that the documents speak very clearly. The plain meaning of the terms speaks very clearly. But does one or more client computers coupled to the wide area network, is there an indication that these client computers are coupled via the wide area network? The client computers? It says they're all connected by a modem. But is that, are they coupled to the wide area network? The answer is, yes, Your Honor, they're coupled to the wide area network just as through the central server, just as your computer in your office is connected to the internet when you choose to click on it. Similarly, the lower, I presume you're talking about the client computers at the lower portion of the figure, are coupled, or have the ability to couple when you click on them. Now, I'm coupled to my law clerk on this computer right here, but the internet has nothing to do with it. This is a local network. And so I'm not asking you to comment on the veracity of my statement. I'm just pointing out that there's a difference between a local area network and a wide area network. And this is a clear local connection. Why wouldn't the same be true of this that we're looking at in this model for data transfer and QA? I apologize, Your Honor. I'm looking at the thing that we're all, yes, this diagram, which is the one thing you base your summary judgment on. One of the documents. Okay. Is there something more that makes it clear that these client computers at the construction sites are somehow connected, coupled to the internet, the web? Or are they coupled to this server in some kind of a direct local network like I'm connected to my law clerk up in the balcony? The answer is yes, Your Honor. The client computers, as we argued before the district court, are connected to or coupled to the wide area network. Where is that evidence? I'm looking at A464 with summary judgment, defendant's summary judgment papers below. I will also note that the testing parties, for example, the QC, QA, and IA labs, would connect their computers to the database server, which resided on the internet and upload testing materials to that database. So those things were coupled to or coupling to the wide area network through the database server. I also will note for the court that that point was not disputed before the district court by plaintiffs. The plaintiffs focused solely on whether or not those figures showed a server coupled to a wide area network. So that point was not disputed below. As I understand it, other than this conversation, it's not disputed in the client and the appellant's briefs. But nevertheless, to address your question, it was argued below to the district court. It was never responded to by plaintiffs at that level. Well, there seems to be an interesting question. Is coupled to, does that require the connection to be via the internet, or can you just be coupled to a computer, which happens to have internet capability, which seems to be your argument, right? They were coupled to a computer, and that computer had the capability of being on the internet, so that was enough. That's correct. Do you think that's what the claim required? It goes to the district court's main construction, coupled to the internet, or coupled to a wide area network. Thank you. It's interesting that the server is coupled to the wide area network separate from the computers being coupled to the wide area network. So it seems that the claim talks about the server being coupled to the wide area network. That is clear. Yes. But it says the client computers are to be coupled in the same way. That's a separate requirement in the claim, that the client computers be coupled to the wide area network, just as the server is. No, it doesn't say that. Well, that's what the claim says. It has to be coupled. It doesn't say it has to be coupled just like the server. Well, it uses exactly the same words, server coupled to the wide area network, client computers coupled to the wide area network. Addresses both identically in the same way. Doesn't that suggest that the type of coupling is the same? No, Your Honor. No? No. A language coupled can encompass many mechanisms for coupling, for connecting. Like optical, electrical, hardwiring. That would be an example. Or frequency coupling. Direct or indirect coupling. Your Honor, Judge Rader's question is appropriate. The same coupling term is used, but the coupling term is a broad term that does not say must be directly coupled, must be electrically coupled, or Wi-Fi coupled. So the answer to your question is, yes, the same language is used, but it does not require the same specific implementation that would fall under that broad coupling language. No, but on summary judgment, neither is the movement entitled to inferences that are not supported on the record. That's correct with respect to issues that the non-movement puts at issue. In this case, the non-movement, the plaintiffs below, did not put that issue, dispute that issue before the district court. There was only one issue before the district court. The district court said in its opinion, and that is whether or not the server was connected to the wide area network. The plaintiffs changed their position in their motion for reconsideration, arose a new issue, still not the one we're discussing today, which the district court did not address at that point in time. So the answer to your question, Your Honor, is yes, the non-movement is entitled to some leeway, but only for those issues for which they put evidence or dispute before the district court, and this one was not disputed before the district court. Provided that the movement has presented an adequate case to prevail. Which we believe we did below, Your Honor. And if, with respect to the, for example, the statement of undisputed facts that accompanied our motion below, which is part of the record here, those statements of undisputed facts were not controverted, other than was there a... Was this a joint statement of undisputed facts? No, it was put forth by the defendants. It's argument, not undisputed, right? No, Your Honor, it's only disputed if the other side comes forward with evidence. Statements of undisputed facts are joint statements of undisputed facts, not attorney argument. That's right, Your Honor, there can be. In this case, there was one side, the defendants put forth a list of facts which they believe undisputed. Plaintiffs chose not to respond to that except for one particular issue. So that the remainder that lays out there, undisputed before the district court. No, there was not a joint statement. There was just a mechanism. Counsel, can I ask you about the dependent claims? And I don't mean the ones that the lower court held to be indefinite, but I'm a little bit baffled by the lower court's ruling, which seems to be that the patent is invalid. And there's a focus in the lower court on, you know, say, Claim 1 and 13, but there seems to be no independent analysis at all in the lower court opinion of Claims 2 through 11, the dependent claims that tend from Claim 1. I asked your opponent the question, and he says that he interprets the lower court's opinion as invalidating under 102 all of those claims. Is that your interpretation as well? Yes, Your Honor. But you didn't even move, Counsel, for invalidity of Claims 2 through 11 on 102. Yes, we did. Let's look at your summary judgment. I have it in front of me, page A463. The lower court makes no independent mention of Claims 2 through 11. And then looking at your summary judgment motion with regards to the dependent claims 2 through 11, on page A463, you argued Claims 2 through 11 of the 498 patent depend from Claim 1 and set forth additional limitations concerning the test methodologies to be applied to the pavement construction material. These tests were well known by 2001, and many were described as required testing in Table 6 to the 1997 contract. Well, not all of them were, and you don't even allege that all of them were. So a lot of the things that are specifically listed in Dependent Claims 2 through 11, what's troubling me is that this appears to me to be an obvious mismotion because you don't even allege that these things are disclosed in their entirety in the contract. Now certainly something you and I both know under anticipation law, saying one element is well known, well, it's not in the document. It's not anticipated. You don't have a 102B. You might have a 103, but you don't have a 102B. So what do I do about that? Never mentioned by the district court, and at least my interpretation, and maybe you'll correct me on this, of your motion, is that you didn't even say that those things were all present in that anticipatory reference. Well, it's our position as expressed here. We have a different interpretation of that language. Yes, that was all present in the documentation before the district court, including the particular tests that were listed in here in 463. Counsel, but your representation is these tests were well known by 2001, not that these tests articulated in Claims 2 through 11 are disclosed in the contract, but your assertion is that they were well known. If you go to the next sentence, pats are agreed to provide quality control services on aggregates. This is all part of the services that were in the contract documents before the district court. These were all tests that were being provided to and contracted to by the AFSR with the Department of Transportation for Utah. So in part, going on further on page 8463, yes, it's our position. It was before the district court that that was part of the contract documents. This is all the testing that they were supposed to do. It did not focus on the contract modification, which brought that contract then into the broader scope of the parent claims, 1 and 13. I think my time is running low here. If the court would like, I'd like to address the exceptionality and the dependent claims of means-based function, or we can continue on this. It's up to the court which questions you'd like to address. I think your time has expired, Mr. Moran. Any final comments? No, I'm sorry. Okay, thank you, Mr. Moran. Mr. Adams? Just very briefly, Your Honors. There was one point that was raised by Mr. Moran that I'd like to address, and it has to do with the experts that answer and what they testified to as far as Webb and Aaron. There was some expert evidence that was related, that was in a different summary judgment brief where answers experts were comparing the infringing product to the claims at issue. Now, what happened is, in the reply brief on the summary judgment, RKI extrapolated from that and said, if you take that expert testimony on this completely different issue and apply it here, it supports our case. Now, that was reiterated in the court's summary judgment order. Under the local rules, we did not have the ability to file a SIR reply on that without leaving the court, and within 10 days of the reply brief, the order came in. We raised the issue that if you look at what these experts were saying, they were looking at the term Webb in the context of documents that also talked about the Internet, and that's why they concluded that there was a wide area network. We raised this in our motion for reconsideration. We brought it up in this brief because it was raised by the court in its order. There's been this argument that we waived that argument. We never waived it. We responded to it at our first opportunity. The fact is, it just wasn't brought up until the reply brief on the summary judgment, and it was, like I said, reiterated in the court's summary judgment order. Can you address the dependent claims that Judge Moore was focusing on? Well, Your Honor, we took the – well, it was our understanding that the court intended to cover everything simply because in the court's judgment, after the summary judgment order, it said that the plaintiffs must take nothing from its suit, and it was issued the same day. It was our understanding that the court intended, even if it didn't state that, to validate all our claims. And you didn't make any separate arguments with regards to claims 2 through 11? Not that I recall. We focused on the wide area network and the server applying the test methodologies. If there are no other questions, Your Honor, I have nothing else to add. Thank you, Mr. Adams. I think that concludes our morning. Thank you. All rise. Your Honor, the court is adjourned until tomorrow morning at 10 a.m.